‡ SNYDER Administrator of REIGART with notice to WHITESIDE, terre-tenant, *against* the COMMONWEALTH, for the use of PASSMORE.

IN ERROR.

The lien of the official recognizance of a sheriff under the act of, 1803, is unlimited both in duration, and extent.

ERROR to the District Court for the city and county of *Lancaster*.

This was a *scire facias* upon the official recognizance of *Henry Reigart*, a former sheriff of *Lancaster* county.

The suit was brought in the name of the commonwealth of *Pennsylvania* for the use of *J. Passmore*, late prothonotary, &c. against *Jacob Snyder*, administrator of *Henry Reigart*, deceased, late sheriff of the county of *Lancaster*, with notice to *John Whiteside* owner and terre-tenant of the lands and tenements which belonged to *Henry Reigart*, and are bound by his recognizance &c. On the 19th of October, 1812 the recognizance of *Reigart* was taken, and he was commissioned on the following day sheriff of *Lancaster* county, in which office he continued for three years. This suit was brought on the 26th of September 1827, and *Whiteside* the terre-tenant, to whom the real estate of *Reigart* was conveyed by deed on the first of April, 1822, took defence and contended that the lien of the recognizance expired in five years from its date, and that therefore the lands purchased by him were not bound. The district court decided that it did not expire, and that they were bound, and to the judgment of the court upon a verdict in favor of the plaintiff in conformity with that opinion the defendant took this writ, and assigned for error this opinion of the district court.

The cause was argued by

*Montgomery* and *Norris* for the plaintiff in error, and

(Snyder *v.* Commonwealth.)

*Rodgers* and *Bnchanan,* for the defendant in error.

The opinion of the court was delivered by

Gibson, C. J.—The question arises on the Act of 1803, by which it is declared that the lands of a sheriff or coroner shall be bound by his official recognizance as effectually as by a judgment of the Common Pleas; whence it is said that it was not intended to bind them more effectually, nor for a longer period: and it is demanded, if the object was merely to create a lien without limiting it, why was it not said so in terms and without reference to the attributes of a judgment? It might be demanded with equal reason on the other side, if the object was not only to create a lien but to limit it, why was not that also said in terms? The truth is, there is a fashion of speech peculiar to public bodies, as well as particular classes, which is followed as much from habit as for convenience, of which, the perpetual recurrence of set forms of expression in successive enactments on the same subject, is a frequent example. So far was a judgment from being employed to represent the general properties of a sheriff's recognizance and by consequence to denote, as it is supposed, a limitation of the lien, that it was introduced into the legislation on the subject, for a distinct and opposite purpose, and at a time when the lien of the particular judgment put as an example, was without any limitation whatever. A limitation in point of duration was affixed to it in common with that of judgments in the Common Pleas, by the act of 1798, and in point of extent the year following; but the legislature had enacted in 1790, that the recognizance of sheriffs and coroners should be "in the nature and effect of judgment obtained in the supreme court," and that they should "bind the lands, tenements and hereditaments of the said sheriffs and coroners in the same manner as such judgments. 2 *Dal. Laws,* 771. Now it is well known that a judgment of the Supreme Court, bound the lands of the debtor, at that time, all over the state, while a judgment of the Common Pleas, bound no more than those within the county; and it was evidently not to put those recognizances on a footing with judgments in any other respect than as regarded the range of the lien, that the word judgment was mentioned at all, or in preference to a mortgage which was rendered unfit for the purposes of illustration by the specific nature of its lien. They were not declared to be judgements in contemplation of law, nor put on the footing of judgments, like recognizances at the common law, but they received from the legislature only one particular property of the judgment of a particular court instead of the properties which were common to the judgments of all the courts. But even when the legislature thought proper to divest the judgment of the Supreme Court of its peculiar property, as was

done in 1799 by restraining its lien to lands within the county, no one dreamed that the act had produced a correspondent restriction in respect of these recognizances;"yet that effect would have been rather more natural than the one insisted on here.    That no restriction was actually intended, is manifest in the provisions of the act on which the question for discussion arises, by which, though passed still later, the lein is restrained in its widest extent.    If however no alteration in any respect was intended to be made by this act of 1803, why, it may be demanded, is there an alteration in the phraseology? Simply because the lien of judgment in the Supreme Court, having in the meantime been restrained to lands within the county, had ceased to answer the purposes of illustration, any better than a mortgage; and the legislature consequently had recourse to the instance of simultaneous judgments of all the county courts in the state, to signify what had been less awkwardly signified by instancing the judgment of a court whose jurisdiction was commensurate with the state itself: and the form of enactment was varied no further.    "*All* the lands tenements, and hereditament s, which such sheriffs, coroners, and their sureties, shall posses or be entitled to in *every* county within this commonwealth."    Say the legislature shall be bound by a recognizance taken in manner aforesaid, as effectually as a judgment to the same amount, in the court of Common Pleas of *all* the counties aforesaid, might or could *now* bind the same." was not the intent of this to give a lien on the lands of the cognizors, all over the state, and was not the lien of simultaneous judgments in the county courts, resorted to as an illustration, because it was peculiarly familiar to the general apprehension, while it excluded the notion of restriction which would have been suggested by a reference to a mortgage or any other specific lien? of the actual intent, there cannot be a doubt.    The word now is senseless if it be not taken to have been predicated of the change that had taken place, by which it had become impossible to create a lien of indefinite extent by the instrumentality of but one judgment.    Whatever may have been the policy of the legislature in regard to other liens, its disposition is apparent in all the legislation that has taken place on the subject; particularly the act of 1790, has been to increase the effect of the security; never to decrease it; and we are bound to give the present Act which is a remedial one, an interpretation that will best correct the mischief intended to be repressed.    Why then should we lay hold on particular expressions in defiance of their obvious meaning, in order to bring the lien under the operation of a law, which was enacted in reference to a different subject, and whose provisions are applicable, in their letter and their spirit, but to judgments in the common acceptation of the word?    The inconvenience of having the land tied up an indefinite time, and the ne-

(Snyder *v.* Commonwealth.)

cessity there might be for postponing the settlement of the estate after the cognizor's death, are the only reasons that have been offered on the score of policy to dispose the mind towards such a construction. The number of the estates thus fettered, is, however too inconsiderable to render the inconvenience a general one; and it is incomparably small when weighed with the injury that would be done to a countless number of persons by impairing the security. The construction contended for would place these in a situation infinitely more precarious than that of a judgment creditor, who may, by diligence, preserve the security of his lien till satisfaction had; but it is not pretended that the lien of this species of recognizance might be revived as in the case of a judgment: and thus a cause of action which had been dormant because undiscovered until the expiration of two years from the completion of the official term, would be excluded from the benefit of the official security. Many causes of action are overlooked for that period, or in fact do not arise within it. Indeed by strict analogy to the lien of judgments as it now stands, to originate an action on the recognizance within the five years, would not preserve the lien without a prosecution of it to judgment within the same time, and even then it would be the lien of the judgment, and not of the recognizance that could be looked to, to hold the land for a longer time. Judgments are to be revived periodically; and if it be said that an action will perform the office of a *scire facias* to revive the lien of a recognizance once for all, the applicability of the act is denied or its provisions must be violated. That is not all; suits against sureties in these recognizances, are limited to five years, while no limitation is affixed to the responsibility of the principal as regards either his person or his land, yet the construction contended for, would give him the immunity of a surety in every respect but that of personal liability, which, it seems to me, would be contrary to the manifest intention of the legislature. I am of opinion therefore that the lien of these recognizances, is unlimited both in duration and extent.

HUSTON, J.—This case is not clear of doubt, but I would say *the lien of the sheriff's recognizance is gone* in all cases where suit is not commenced within five years from its date.

If the matter depended on the fourth section of the act of the 28th March, 1803, there would be more difficulty. All the lands *&c.* which such sheriff, coroners, and their sureties shall be entitled to in every county in the commonwealth, shall be bound by such recognizance, as effectually as a judgment to the same amount in all the counties might or could *now* bind the same: and the proviso that no suit against the sureties shall be sustained unless the same

37

(Snyder *v.* Commonwealth.)

be commenced within five years from the date of such bond or re-cognizance, leaves it equivocal. The proviso is more extensive than the lien, it not only relieves the land of the sureties from lien, but releases the surety from suit.

By the act of 4th April, 1798, the lien of a judgment ceased at the end of five years. It is asked of us to make this recognizance which by the law is equal to a judgment, much superior to it. We must always take it that the legislature knows of existing laws. In this case we are sure the act of the 4th April was before them, for first they say "as effectually as a judgment might or could *now* bind, and secondly the fourth section of act 4 April 1798, is expressed by a limitation of the liability of sureties in bonds of public officers, and by it the limitation is seven years from the cause of action—this by act 28th March, 1803, is limited to five years from date of bond, hence I would infer that the legislature knew a judgment then bound only five years and said a recogn-izance bound only for same time. It is said no *sci. fa.* can issue to continue the lien of this recognizance. I answer it was not in-tended to be continued when we consider that this lien extended over the whole state, and might affect purchasers who never heard that owners of lands had been sheriffs, it is not strange that a lien so extensive in its range should be short in its duration. It exists solely by act of assembly; I would not extend it beyond the letter of the act, more harm than good will follow the extension. In short, I would have said a sheriff may be sued on his official bond or recognizance 20 years after its date and when judgment recover-ed execution might be levied on any property, he might then have. But I would not hold his recognizance to be a lien so as to affect purchasers for longer than five years from its date.

Rogers, J. was sitting at *nisi prius* and Ross, J. concurred in the point directly decided, without expressing an opinion whether the lien extended to lands not within the county.

Judgment affirmed.